**In re Riaan POTGIETER and Kristy Potgieter, Debtor(s).**

**No. 9:09–bk–09937–ALP.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

April 14, 2010.

Carmen Dellutri, David W. Fineman, Dellutri Law Group PA, Fort Myers, FL, for Debtors.

### ORDER ON AMENDED TRUSTEE'S UNFAVORABLE RECOMMENDA-TION CONCERNING CONFIRMA-TION OF THE PLAN

(Doc. No. 38)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 13 case of Riaan and Kristy Potgieter (the Debtors) is the Amended Trustee's Unfavorable Recommendation Concerning Confirmation of the Plan (Doc. No. 38), filed on January 29, 2010. The precise question presented to this Court is whether a Chapter 13 Plan where the Debtors' Plan proposes to pay unsecured, nondischargeable student loan creditors directly as a separate class of creditors from other general unsecured creditors when the general unsecured creditors will receive 100% distribution under the Plan.

The issues raised by the Trustee for this Court's consideration on the Amended Trustee's Unfavorable Recommendation Concerning Confirmation of the Plan are as follows.

The Debtors filed their Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code on May 14, 2009. The Debtors filed with their Petitions and Schedules, the required form B22C (Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of

Commitment Period and Disposable Income) (B22C). The B22C indicated that the Debtors had an above median income and on line 59 of the B22C, and the Debtors had a monthly disposable income of $641.47 to pay unsecured claims. When multiplied by 60 months, the Plan as proposed should pay the Debtors' unsecured claims a total of $38,488.20. In addition, the Debtors, Budget as listed on Schedules I and J show they have $882.92 available per month to fund the Plan after subtracting the student loan expense of $75.00 per month. The Debtors' proposed Plan indicates Debtors' intent to pay approximately $265.00 per month over forty-eight (48) months.

The Trustee upon reviewing the Debtors' Claims Register noted that the Debtors' unsecured claims totaled $31,440.65. The Debtors' monthly disposable income, when taken in the context of a sixty (60) month Plan, is sufficient to pay their unsecured claims in full. However, the Debtors propose to pay the Proof of Claim 3–1 of ECMC, filed in the amount of $28,889.17, outside of the Plan while paying other unsecured claims 100% inside the Plan over forty-eight (48) months. The Debtors listed the student loan payment as a current expenditure on Schedule J at $75.00 per month. When multiplied by the forty-eight (48) month Plan as proposed by the Debtors, the student loan claim would only be paid a total of $3,600.00 of the $28,889.17 total claim, or only 12% of the student loan debt, over the life of the proposed Plan. Thus, it is the Trustee's contention that the Plan unfairly discriminates against the student loan claim of ECMC.

It is the Debtors' contention that since the general unsecured creditors are being paid 100% and the long-term student loan debt will be paid outside of the Plan at the contract rate, the treatment of the remaining unsecured creditors is not unfairly discriminatory and, therefore, the Debtors meet the test provided under § 1322(b)(1).

Student loan debt, which is typically unsecured, is not granted priority under the Bankruptcy Code and, therefore, there is no requirement that it be paid in full during a plan. However, in 1990, Congress passed the Student Loan Default Prevention Initiative Act of 1990, Pub. L. 101–508, §§ 3001, 3007, 104 Stat. 1388, 1388–25, 1388–28 (1990), which made certain government-sponsored educational loans nondischargeable in Chapter 13. Under BAPCPA, both government-sponsored and private student loans are nondischargeable in a Chapter 13 bankruptcy. *See* 11 U.S.C. §§ 1328(a)(2) and 523(a)(8). In addition, student loan debt claims accrue interest during the life of a Chapter 13 plan if the debtor does not maintain monthly payments. "Thus, chapter 13 debtors have a compelling reason to seek, at minimum, to pay their student loan creditors whatever portion of disposable income is required to avoid the postpetition accrual of interest and/or penalties, lest the debtors emerge from bankruptcy owing significantly more on this nondischargeable debt than they did upon entering bankruptcy." *See In re Orawsky*, 387 B.R. 128, 144 (Bankr.E.D.Pa.2008). As a result, many debtors with student loan debt propose Chapter 13 plans that classify their unsecured debt such that payments go first to the nondischargeable student loan debt, to the extent necessary to keep it current, and leave only the remainder, usually a much smaller amount, for other dischargeable debt.

Various courts considering whether plans "unfairly discriminate" when they allow full monthly payments on student loan debts have come to different conclusions. *See In re Colley*, 260 B.R. 532, 535–38 (Bankr.M.D.Fla.2000) (noting a majority and minority approach). Some cases allow a debtor to make regular payments

to student loan creditors, even if that results in a substantially lower payment to general unsecured creditors. This line of cases typically finds that discriminatory treatment is authorized by § 1322(b)(5), which provides that a plan may provide for the cure of a default and maintenance of payments while the case is pending "on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Given this provision, courts with this view hold that regular student loan payments, while possibly discriminatory to other unsecured creditors, are not unfair since the Code specifically allows for them.

Alternatively, many cases have ruled that Chapter 13 plans that propose to pay student loan claims at rates substantially higher than other unsecured debts unfairly discriminate and cannot be confirmed. *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D.Ohio 1992); *In re Scheiber*, 129 B.R. 604 (Bankr.D.Minn.1991); *In re Kruse*, 406 B.R. 833, 839–40 (Bankr.D.Iowa 2009); *In re Mason*, 300 B.R. 379, 385–88 (Bankr. D.Kan.2003); *In re Bentley*, 266 B.R. 229, 240–43 (1st Cir. BAP 2001). Particularly, if the debtor fails to offer any justification to the court the reasons for the discrimination other than the nondischargeable nature of the student loan debt. These cases recognize that § 1322(b)(5) allows for (but does not require) a debtor to make maintenance payments on long term debt, but go on to conclude that such payments are still subject to unfair discrimination scrutiny under § 1322(b)(1).

The passage of BAPCPA did not alter the language of § 1322(b)(1) or § 1322(b)(5), giving pre-BAPCPA cases continued relevance. Nevertheless, the Court agrees that BAPCPA impacts the analysis, at least in some cases, because BAPCPA altered the calculation of "projected disposable income" which an above-median income debtor must commit to a Plan and added a requirement that a debtor pay his or her "projected disposable income."

The relevant statutory provision provides in pertinent part—

11 U.S.C.A. § 1322. Contents of plan

. . . . .

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title [11 USCA § 1122], but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims,

. . . . .

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . . . .

11 U.S.C. § 1322(b)(1), (4) and (5).

Various courts have considered the four factors in determining whether the treatment of a class designated under § 1322(b)(1) is fair: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without such discrimination; (3) whether

such classification is proposed in good faith; and (4) whether the degree of discrimination is related to the basis or rationale for the discrimination. *Matter of Tucker,* 130 B.R. 71, 73 (Bankr.S.D.Iowa 1991); *Matter of Cronk,* 131 B.R. 710, 712 (Bankr.S.D.Iowa 1990); *Matter of Harris* 132 B.R. 166, 170 (Bankr.S.D.Iowa 1989); *see also, Leser,* 939 F.2d at 672. The burden is on the debtors to establish that the classifications of their unsecured debts are not discriminatory. *In re Lawson,* 93 B.R. 979, 984 (Bankr.N.D.Ill.1988). It is the debtor's burden to prove the elements of a confirmable plan. *In re Anderson,* 173 B.R. 226, 229 (Bankr.D.Colo.1993); *In re Ristic,* 142 B.R. 856, 859 (Bankr. E.D.Wis.1992).

■ Section 1322(b)(1) allows a plan to designate a class or classes of unsecured claims, as provided in Section 1122 of the Bankruptcy Code. However, a plan may not discriminate unfairly against any class so designated. *In re Leser,* 939 F.2d 669, 671 (8th Cir.1991). Nothing prohibits a debtor from placing unsecured claims in separate classes in a Chapter 13 plan as long as the classification complies with Section 1122 of the Bankruptcy Code and does not result in unfair discrimination between the claims grouped separately. *Id.* While the Debtors' unsecured student loan obligations are arguably "substantially similar" to their remaining unsecured debts, Section 1122 "does not prohibit the placement of substantially similar claims in different classes." *Id.* (quoting *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir.1987)). Thus, the separate classification of the debtor's student loan obligations does not violate Section 1122.

■ The second requirement of Section 1322(b)(1) is that the court must determine whether the placement of the student loan debts in a separate class unfairly discriminates against other unsecured claims. "[B]y allowing for separate classes of unsecured claims, Congress anticipated some discrimination, otherwise separate classes would have no significance. It is only unfair discrimination that is prohibited." *Id.* at 671–72 (quoting *In re Storberg,* 94 B.R. 144, 146 (Bankr.D.Minn.1988)).

■ This Court has reviewed the Debtors' Plan and concludes that under the circumstances of this case it does not discriminate unfairly. The Debtors have chosen to separately classify their unsecured student loan obligations from other unsecured debts and intend to pay the student loan obligations outside of their proposed Plan. The classification does not discriminate unfairly because: 1) the plan provides for a 100% repayment of all general unsecured claims; 2) the student loan obligation is non-dischargeable and, therefore, ECMC will receive 100% repayment; and 3) the debtor has the right under § 1322(b)(4) to provide for payments on any unsecured claim to be made concurrently with payments on any secured claim. It is the combination of these factors which persuades this Court that the plan classification does not unfairly discriminate.

Based on the foregoing, this Court is satisfied that the Chapter 13 Trustee has not demonstrated that the Debtors' treatment of their student loan debt in this manner, and its payment outside of the plan, will be discriminatory to the Creditor while the Debtors pay their remaining general unsecured creditors' claims inside the Plan. The Court recognizes that the Debtors proposed a Plan that will pay the general unsecured creditors 100% distribution under the Plan. This Court also notes that ECMC will be paid according to the Debtors individual contractual terms during the life of the Plan. ECMC will receive no more than they would receive outside of bankruptcy, and will not be paid in full during the life of the Debtors' Chap-

ter 13 Plan. Thus, while the Trustee has correctly demonstrated that the claimed filed by the Creditor, ECMC, will receive a lower payout during the Plan, the terms of 1322(b)(5) allow the maintenance of payments, outside of a plan, on an unsecured claim that extends beyond the life of the debtor's plan. *See* 11 U.S.C. § 1322(b)(5).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtors proposed Plan, as written, is not unfairly discriminatory since ECMC's student loan claim is a nondischargeable debt and the Debtors will continue to pay the debt beyond the life of their Chapter 13 Plan. It is further

ORDERED, ADJUDGED AND DECREED that the Confirmation Hearing shall be held on June 17, 2010, beginning at 1:30 p.m. at the United States Bankruptcy Courthouse, Fort Myers, Federal Building and Federal Courthouse, Room 4–117, Courtroom E, 2110 First Street, Fort Myers, Florida, to consider confirmation of the Debtors' Plan.